**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| **BRIAN L. TAYLOR,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CAUSE NO. 1:25-cv-00656-ALT** |
| | ) | |
| **COMMISSIONER OF SOCIAL SECURITY,** ***sued as Frank Bisignano, Commissioner of the Social Security Administration*****,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**OPINION AND ORDER**

Plaintiff Brian L. Taylor appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying his application under the Social Security Act (the "Act") for a period of disability and Disability Insurance Benefits ("DIB"). (ECF 1). Because Taylor's sole argument in pursuit of a remand is unpersuasive, the Commissioner's decision will be AFFIRMED.

**I. FACTUAL AND PROCEDURAL HISTORY**

Taylor applied for DIB in June 2023, alleging disability as of March 9, 2023. (ECF 10 Administrative Record ("AR") 22, 180-91).[1] Taylor was last insured for DIB on December 31, 2023, and thus, he must show that he was disabled on or before that date. *See Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997). Taylor's claim was denied initially and upon reconsideration. (AR 75, 84). On January 28, 2025, administrative law judge ("ALJ") Meredith Jacques conducted an administrative hearing, at which Taylor, who was represented by Tara

---

[1] The AR page numbers cited herein correspond to the ECF-generated page numbers displayed at the top center of the screen when the AR is open in ECF, rather than the page numbers printed in the lower right corner of each page.

Budd,[2] and a vocational expert ("VE") testified. (AR 40-74). On February 10, 2025, the ALJ rendered an unfavorable decision to Taylor, concluding that he was not disabled as of his date last insured because he could perform his past relevant work as a user support analyst despite the limitations caused by his impairments. (AR 22-34). The Appeals Council denied Taylor's request for review (AR 6-10), and the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981.

On December 4, 2025, Taylor filed a complaint in this Court appealing the Commissioner's final decision. (ECF 1). Taylor advances just one argument in this appeal—that the ALJ erred by failing to include upper extremity reaching limitations in the residual functional capacity assessment ("RFC"). (ECF 18 at 4).

On the date of the Commissioner's final decision, Taylor was sixty years old (AR 180), had attended four or more years of college (AR 46, 196), and had past work as a user support analyst (AR 66-67). In his application, Taylor alleged that he is disabled due to obesity and "AFIB 2 heart attacks"; type 2 diabetes (insulin dependent); neuropathy glaucoma cataracts and macular degeneration; depression, anxiety, and insomnia; arthritis in his knees and elbows; shortness of breath; high blood pressure; and enlarged prostrate. (AR 195).

**II. STANDARD OF REVIEW**

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner … , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as

---

[2] Budd is a non-attorney representative associated with Taylor's counsel's law firm. (*See* AR 22, 162).

adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed "only if [it is] not supported by substantial evidence or if the Commissioner applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Id.* (collecting cases). "Rather, if the findings of the Commissioner … are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

## III. ANALYSIS

### *A. The Law*

Under the Act, a claimant seeking DIB must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment … which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring the ALJ to consider sequentially whether:

> (1) the claimant is presently employed [in substantial gainful activity]; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's [RFC] leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Pufahl v. Bisignano*, 142 F.4th 446, 452-53 (7th Cir. 2025) (citation omitted); *see also Sevec v. Kijakazi*, 59 F.4th 293, 298 (7th Cir. 2023); 20 C.F.R. § 404.1520. "Between the third and fourth steps, the ALJ determines the claimant's [RFC], which is the claimant' maximum work capability." *Pufahl*, 142 F.4th at 453 (citations omitted); *see also* 20 C.F.R. §§ 404.1520(e), 404.1545(a). "The burden of proof is on the claimant for the first four steps." *Fetting v. Kijakazi*, 62 F.4th 332, 336 (7th Cir. 2023) (citation omitted). "At step five, the burden shifts to the [Commissioner] to show that there are significant numbers of jobs in the national economy for someone with the claimant's abilities and limitations." *Id.* (citation and internal quotation marks omitted). "If at any step a finding of disability or nondisability can be made, the Social Security Administration will not review the claim further." *Sevec*, 59 F.4th at 298 (citation and brackets omitted).

### *B. The Commissioner's Final Decision*

In the Commissioner's final decision, the ALJ found as a threshold matter that Taylor was insured for DIB through December 31, 2023. (AR 24). At step one of the five-step sequential analysis, the ALJ found that Taylor had not engaged in substantial gainful activity from his alleged onset date of March 9, 2023, through his date last insured of December 31, 2023. (*Id.*). At step two, the ALJ found that Taylor had the following severe impairments: atrial fibrillation, coronary artery disease, obesity, diabetes with neuropathy, and lumbar spine arthritis. (*Id.*). At step three, the ALJ concluded that Taylor did not have an impairment or combination of

impairments severe enough to meet or equal a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, through his date last insured. (AR 28).

The ALJ assigned Taylor the following RFC:

> [T]hrough the date last insured, the claimant had the [RFC] to perform light work as defined in 20 CFR 404.1567(b) except the claimant could never climb ladders, ropes or scaffolds; could occasionally climb ramps and stairs; occasionally balance …; occasionally stoop, kneel crouch and crawl. The claimant must avoid concentrated exposure to hazards, such as unprotected heights and unguarded, moving mechanical parts.

(AR 29). The ALJ determined at step four that through his date last insured, Taylor was capable of performing his past relevant work as a user support analyst both as he performed it and as generally performed. (AR 33). Consequently, Taylor's application for DIB was denied. (AR 34).

*C. The RFC*

Taylor's sole argument on appeal is that the ALJ erred by failing to include upper extremity reaching limitations in the RFC. (ECF 18 at 4). In advancing this argument, Taylor relies on the range-of-motion measurements recorded by Dawn Fox, a nurse practitioner (NP), who examined Taylor in November 2023 and documented that he had normal upper extremity range of motion except for 90 degrees active shoulder flexion bilaterally (normal range is 0 degrees to 180 degrees) and 100 degrees active shoulder abduction bilaterally (normal range is 0 degrees to 170 degrees). (ECF 18 at 11-12; *see* AR 370). Taylor contends this range-of-motion testing "directly demonstrates an inability to extend his arms in any direction because he could not raise his arms over his head." (ECF 18 at 12).

1. <u>Relevant Medical Evidence</u>

In February 2023, Taylor visited the emergency room for an irregular heartbeat. (AR 407). Taylor denied any chest pain or palpitations but complained of shortness of breath on exertion and some bilateral shoulder discomfort during the past week which was not relieved by

ibuprofen or Aleve. (*Id.*). On examination, Taylor demonstrated “appropriate” range of motion and had no shoulder tenderness, crepitus, or reproducible pain to palpation. (AR 411-12). Taylor was prescribed a muscle relaxer. (*Id.*).

In November 2023, Taylor was examined by NP Fox, who noted Taylor had been noncompliant with his medication due to financial and access limitations. (AR 361, 366). He was morbidly obese and had mild limitations in standing, lifting, and carrying, and moderate limitations in walking. (*Id.* at 365-67). A clinical examination revealed normal (5/5) muscle strength in all extremities but that Taylor “was not able to lift, carry, or handle light objects.” (AR 364). Yet, NP Fox further documented that Taylor could “pinch, grasp, and manipulate small and large objects without difficulty” and had no limitations in sitting, bending, reaching, feeling, or grasping. (AR 365-67). A range-of-motion report showed Taylor had normal upper extremity range-of-motion except for 90 degrees shoulder flexion bilaterally (normal range 0 degrees to 180 degrees) and 100 degrees shoulder abduction bilaterally (normal range 0 degrees to 170 degrees). (AR 370). NP Fox rated Taylor’s dexterity as normal (5/5). (AR 372).

On January 1, 2024 (the day after his date last insured), Taylor visited the emergency room due to a four-day history of aching left upper chest pain, shortness of breath, and some swelling in the left arm. (AR 1077). A clinical examination revealed normal range of motion. (AR 1078). Taylor was given medication for atrial fibrillation, and imaging findings suggested congestive heart failure and mild pulmonary edema. (AR 1079). On January 11, 2024, Taylor saw a cardiologist as a follow-up to his emergency room visit and noted chest pain that extended into his left shoulder and arm. (AR 1068). The provider noted this description was “classic for angina.” (AR 1068). Imaging showed no pulmonary embolism. (AR 1072).

In January 2024, J.V. Corcoran, a state agency physician, reviewed Taylor’s record and

concluded that he could lift 10 pounds frequently and 20 pounds occasionally; perform unlimited pushing or pulling; stand or walk for six hours in an eight-hour workday; sit for six hours in an eight-hour workday; frequently balance, stoop, kneel, crouch, or crawl; and occasionally climb ladders, ropes, scaffolds, ramps, and stairs. (AR 80-81). Dr. Corcoran indicated that Taylor had no manipulative limitations. (AR 81).

In February 2024, Taylor underwent a coronary artery bypass procedure. (AR 723-24). A portable chest X-ray during Taylor's hospitalization stay for the surgery noted "[m]ild osteoarthritis of the AC joints." (AR 732, 897).

In July 2024, Shayne Small, M.D., a state agency physician, reviewed Taylor's record and assigned the same limitations as Dr. Corcoran. (AR 89-90).

2. Applicable Law

"An ALJ need not address every piece of evidence or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024) (citations omitted). Rather, an ALJ is "subject to only the most minimal of articulation requirements." *Id.* All that is required is that the ALJ "provide an explanation for how the evidence leads to their conclusions that is sufficient to allow … a reviewing court[] to assess the validity of the agency's ultimate findings and afford [the claimant] meaningful judicial review." *Id.* (citations and internal quotation marks omitted). In shorthand terms, an ALJ "needs to provide a logical bridge from the evidence to [her] conclusion." *Id.* (citation and internal quotation marks omitted). Having said that, "[t]he ALJ must evaluate the record fairly. Thus, although the ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling." *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) (citations omitted); *see*

*also John B. v. Saul*, No. 2:18-cv-00223-JVB-JEM, 2019 WL 4233744, at *2 (N.D. Ind. Sept. 5, 2019).

The RFC is "the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," meaning eight hours a day, for five days a week. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (bold emphasis omitted). That is, the "RFC does not represent the *least* an individual can do despite his or her limitations or restrictions, but the *most*." *Id.* (footnote omitted); *see also Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004); 20 C.F.R. § 404.1545(a)(1). The RFC assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence. *See* SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see also* 20 C.F.R. § 404.1545(a)(3). When determining the RFC, the ALJ must consider all medically determinable impairments, mental and physical, even those that are non-severe. *See* 20 C.F.R. § 404.1545(a)(2); *see also Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008). "[T]he determination of a claimant's RFC is a matter for the ALJ alone—not a treating or examining doctor—to decide." *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) (citation omitted); *see also* 20 C.F.R. § 404.1545(e).

3. <u>Discussion</u>

Taylor contends the ALJ erred by failing to include reaching limitations in the RFC, given the shoulder flexion and abduction range-of-motion measurements recorded by NP Fox in November 2023. (ECF 18 at 11-12; *see* AR 370). Taylor's argument is essentially this: "Common

sense dictates that limited range of motion in the arm and shoulder would result … in limitations in the ability to reach and extend [his] arm." *Aday v. Colvin*, No. CIV-13-431-R, 2014 WL 2766080, at *2 (W.D. Okla. June 18, 2014) (citation omitted); *see generally* SSR 85-15, 1985 WL 56857, at *2 (Jan. 1, 1985) (non-exertional limitations can affect the ability to reach or to handle an object).[3] While that argument may have some traction when presented with certain factual records, it does not carry the day here.

To explain, despite the shoulder range-of-motion measurements she recorded, NP Fox expressly opined that Taylor had *no* limitations in reaching in November 2023. (AR 367). Likewise, in January 2024, Dr. Corcoran, a state agency physician, reviewed Taylor's record and assigned no reaching limitations, despite expressly noting that Taylor had some limitation in his shoulders bilaterally. (AR 81). Again, in July 2024, Dr. Small, another reviewing state agency physician, reached the same conclusion. (AR 90). Therefore, *none* of the medical source opinions of record assigned Taylor any reaching limitations. *See Gedatus v. Saul*, 994 F.3d 893, 904 (7th Cir. 2021) ("A fundamental problem is [the claimant] offered no opinion from any doctor to set sitting limits … greater than those the ALJ set." (citation omitted)); *Baker v. Berryhill*, No. CIV-17-500-STE, 2017 WL 6420763, at *2-3 (W.D. Okla. Dec. 15, 2017) (affirming the ALJ's decision to include no reaching limitations in the RFC where it was supported by a physician's opinion that found limited shoulder range of motion but assigned no work-related reaching restriction).

Furthermore, the purported "corroborat[ing]" medical evidence Taylor cites in support of

[3] An exertional activity is any of the "primary strength activities" such as sitting, standing, walking, lifting, carrying, pushing, or pulling. *Lee v. Barnhart*, No. 01 C 2776, 2003 WL 260682, at *10, n.20 (N.D. Ill. Feb. 6, 2003) (citing SSR 83-10, 1983 WL 31251 (Jan. 1, 1983)). A non-exertional limitation is an impairment that does not directly affect a primary strength activity and includes "impairments which affect the mind, vision, hearing speech, use of the body to climb, balance, stoop, kneel, crouch, crawl, *reach*, or handle, or use of the fingers for fine activities." *Id.* (emphasis added) (citing SSR 83-10, 1983 WL 31251 (Jan. 1, 1983)).

reaching limitations does little to bolster his argument, as these medical visits primarily addressed his cardiac issues rather than any complaints of shoulder pain or limitations. (*See* ECF 18 at 12; AR 394, 681, 732, 897, 1068, 1077, 2077). While a note in May 2023 (five months after Taylor's date last insured) did note musculoskeletal pain of the left shoulder and chest, the provider considered it an "acute" injury likely due to Taylor's "lifting and straining" while lifting and carrying groceries into the house earlier that day. (AR 30, 32, 394-95). Thus, this pain stemmed from Taylor's exertional activities of lifting and carrying, which the ALJ accounted for in the RFC for light work, not the non-exertional activity of reaching. (*See* AR 31 ("The undersigned has limited the claimant to work at the light level of exertion, which takes into consideration the musculoskeletal pain.")).

Nor did the ALJ ignore Taylor's shoulder range-of-motion limitations. Quite the opposite, as the ALJ expressly acknowledged that Taylor "did have limited range of motion of the … bilateral shoulders …." (AR 30; *see also* AR 32). It is true, however, that the ALJ failed to expressly mention the imaging results taken in connection with his coronary artery bypass procedure in February 2024, which revealed "Mild osteoarthritis of the AC joints." (ECF 18 at 13; *see* AR 732, 897). But as the ALJ noted, this procedure took place after Taylor's date last insured. (AR 31). In any event, Dr. Small reviewed Taylor's record *after* February 2024 (AR 85-86, 92) and did not add any reaching limitations as a result of these imaging tests (AR 89-90), and the ALJ found Dr. Small's opinion "persuasive". (AR 32). As a final point, Taylor raised no allegations of difficulty with reaching when questioned by his representative at the hearing. (AR 50-64; *see also* AR 49 (testifying that the only lifting or carrying involved in his past work as a computer programmer analyst at APEX was lifting and carrying his laptop computer)).

"[A]s [the Seventh Circuit Court of Appeals] has underscored time and again, a claimant

bears the burden of proving their disability." *Thorlton v. King*, 127 F.4th 1078, 1080 (7th Cir. 2025) (citations omitted); *see Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004) ("It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove the claim of disability." (citations omitted)). Taylor has failed to carry that burden with respect to his argument for reaching limitations. The RFC assigned by the ALJ is supported by substantial evidence.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's final decision denying disability is AFFIRMED. The Clerk is DIRECTED to enter a judgment in favor of the Commissioner and against Taylor.

SO ORDERED.

Entered this 28th day of September 2026.

/s/ Andrew L. Teel
Andrew L. Teel
United States Magistrate Judge